ALPINE RIDGE GROUP, et
al., Plaintiffs,

v.

Jack F. KEMP, in his official capacity as
Secretary of the United States Depart-
ment of Housing and Urban Develop-
ment; and the United States Depart-
ment of Housing and Urban Develop-
ment, Defendants.

No. C89–1654R.

United States District Court,
W.D. Washington.

Sept. 20, 1990.

Order Granting Supplemental Relief
in Part April 16, 1991.

Warren Daheim, John Guadnola, Donald Hanford, Tacoma, Wash., for plaintiffs.

Charles Pinnell, Office of the U.S. Atty., Seattle, Wash., for defendants.

## ON SUMMARY JUDGMENT

ROTHSTEIN, Chief Judge.

THIS MATTER comes before the court on plaintiffs' and defendants' cross-motions for summary judgment. Having reviewed the motions together with all documents filed in support and in opposition, having heard oral argument and being fully advised, the court finds and rules as follows:

## I. FACTUAL BACKGROUND

Plaintiffs in this case are owners of housing projects which fall under Section 8 of the United States Housing Act of 1937 as amended, 42 U.S.C. § 1437f. The Section 8 housing program is administered by defendants Secretary and Department of Housing and Urban Development (collectively "HUD"). Pursuant to Section 8 as enacted in 1974, private developers were encouraged to submit proposals to HUD for the construction and operation of federally subsidized low-income housing. The developers chosen by HUD then entered into Housing Assistance Payment (HAP) contracts either with HUD directly or with local public housing agencies authorized by HUD to act as contract administrators. Among other things, these HAP contracts provided for the periodic adjustment of the maximum monthly rent to reflect fair market rents in the local area.

In the early 1980's, a dispute arose between certain Section 8 project owners and HUD concerning the proper method for determining rent adjustments. The owners insisted that, pursuant to their HAP contracts, they were entitled to rent adjustments based on the application of Automatic Annual Adjustment Factors (AAAFs) published each year by HUD. HUD, on the other hand, asserted that it had the right in its discretion to conduct rent comparability studies based on individualized market surveys.

The Ninth Circuit settled the dispute in *Rainier View Associates v. United States Department of Housing and Urban Development,* 848 F.2d 988 (9th Cir.1988), by holding that the HAP contracts into which HUD had entered clearly and unambiguously required HUD to apply the AAAFs in adjusting rents. The court noted that while the statutory language of Section 8 would have permitted HUD to use either the AAAFs or comparability studies, HUD had made a binding election of the AAAFs method under the contract and could not change its mind.

In 1989, however, Congress revisited Section 8 by passing an amendment known as Section 801 of the Department of Housing and Urban Development Reform Act of 1989, Pub.L. No. 101–235, 103 Stat.1987, Dec. 15, 1989. In brief, Section 801 prospectively authorizes HUD to adjust rents based on rent comparability studies. As for its retroactive effect, Section 801 applies to all owners whose rents were previously adjusted on the basis of comparability studies or whose contracts required them to request an adjustment and who failed to do so because of an anticipated negative adjustment. Regarding those owners, Section 801 authorizes HUD to adjust the rents from 1980 to the present by either applying the AAAFs to that portion of the contract rent not attributable to the debt service, or by multiplying 30% of the applicable AAAF by the entire contract rent, whichever is greater.

Plaintiffs in this case allege that Section 801 is unconstitutional on the grounds that it violates their rights to due process under the Fifth Amendment to the United States Constitution.[1] They contend that it does so

1. Plaintiffs also originally alleged that Section 801 resulted in a taking without just compensation contrary to the Fifth Amendment of the United States Constitution. Based on this claim, which it construed as one for damages, HUD contended that the proper jurisdictional

forum for the case was in the United States Court of Claims. *Compare Preseault v. Interstate Commerce Commission,* 494 U.S. 1, 110 S.Ct. 914, 108 L.Ed.2d 1 (1990), in which the United States Supreme Court held that takings claims for the recovery of damages from the

by impairing their vested contractual rights to rent adjustments based on the AAAFs as provided in their HAP contracts with HUD or authorized public housing agencies. HUD is equally insistent on the constitutionality of Section 801. Both plaintiffs and HUD now cross-move for summary judgment.

## II. LEGAL ARGUMENT

### A. Ripeness

 Before turning to the substance of the case, HUD asserts that, insofar as the prospective effect of Section 801 is concerned, plaintiffs' claims are not ripe because HUD has not yet issued regulations implementing Section 801.[2] Accordingly, no final decisions have been made regarding the application of the regulations to any particular housing project.

This argument has no merit. Plaintiffs make it perfectly clear that they are challenging the constitutionality of the legislation on its face as violative of their contract rights. They are not asking the court to examine the manner in which Section 801 will be applied to each individual housing project; instead they request a broad declaratory ruling that the legislation is unconstitutional because it conflicts with the language of their HAP contracts guaranteeing them the right to rent increases based on the AAAFs. Thus, the court has no need to consider the effect of regulations or to wait and see what steps HUD takes to implement Section 801.

### B. Analysis of Constitutionality

Although plaintiffs and HUD reach entirely different conclusions, they do agree on the elements of the analysis to be applied in determining the constitutionality of

Section 801. The following questions must be addressed:

1. Pursuant to the HAP contracts, do plaintiffs have a contractual right to rent adjustments based on the AAAFs?

2. If plaintiffs do have a contractual right, is it vested?

3. If plaintiffs have a vested contract right, does Section 801 substantially impair the exercise of that right?

4. If there is a substantial impairment of plaintiffs' vested contract rights, then is the congressional purpose sufficiently important to permit abrogation of those rights?

The court will consider each of these questions in turn:

### 1. Existence of Contract Rights

 Plaintiffs and HUD agree that, in order to assert a due process claim under the Fifth Amendment, plaintiffs must establish that they have a cognizable property right arising out of the HAP contracts. *Bowen v. Public Agencies Opposed to Social Security Entrapment*, 477 U.S. 41, 54–55, 106 S.Ct. 2390, 2397–98, 91 L.Ed.2d 35 (1986); *Peterson v. United States Department of Interior*, 899 F.2d 799, 807 (9th Cir.1990).

Plaintiffs argue that the answer is plain. As discussed above, the Ninth Circuit unequivocally held in *Rainier View* that plaintiffs have a contractually guaranteed right to rent adjustments based on the AAAFs:

> Under the [Section 8] statute, HUD could choose either a market survey method *or* a formula method. In the contract, HUD elected the formula method. Having made its choice, HUD cannot now change its mind. The overall limitation provision

---

federal government are premature until the property owner has exhausted the remedies available in the Court of Claims.

Without acknowledging any merit in HUD's jurisdictional argument, plaintiffs stated in their responsive brief and reaffirmed at oral argument that they were no longer pursuing a Fifth Amendment taking theory. Plaintiffs' Memorandum of Authorities in Opposition to Defendant's Motion for Summary Judgment and in Reply to Defendant's [sic] Opposition to Plain-

tiffs' Motion for Summary Judgment, p 6 n. 9. HUD recognized at oral argument that plaintiffs' decision to tailor their case mooted its jurisdictional argument.

**2.** The implementing regulations were to have been issued within six months of the passage of the legislation, *i.e.*, by June 15, 1990. As of the date of oral argument on September 4, 1990, no regulations had been issued.

of the statute[3] and the contract permit HUD to adjust the formula factors in light of market conditions, but it does not permit HUD to abandon entirely the formula method it chose and to adjust rents solely on the basis of a market survey. HUD's interpretation of the overall limitation provision would render the formula method authorized by the statute and elected in the contract a nullity. It would make all rent adjustments depend on the market survey method....

In sum, the contract clearly elects the formula method, one of two statutorily authorized methods for calculating rent adjustments. The overall limitation provision just as clearly authorizes modifications of the formula applied to keep assisted rents in line with market rents. What the overall limitation provision does *not* do is permit HUD to switch from one method to another. That is clear from the statutory language and HUD's own regulations interpreting the statute. We thus hold that the contract unambiguously support [sic] [plaintiffs'] interpretation.

(Emphasis in original.) 848 F.2d at 991.

HUD's response is two-fold. First, it contends that, pursuant to Section 801, Congress has now reaffirmed HUD's authority to use comparability studies as a limitation on AAAF rent adjustments, thereby expressly rejecting the Ninth Circuit decision in *Rainier View* that Section 8 owners have a right to AAAF adjustments. Relying on cases like *Regents of the University of California v. Bakke*, 438 U.S. 265, 349–50, 98 S.Ct. 2733, 2777–79, 57 L.Ed.2d 750 (1978), HUD argues that this court must defer to a subsequent congressional pronouncement regarding the proper interpretation of a statute. *See also Red Lion Broadcasting Co. v. FCC*, 395 U.S. 367, 380–81, 89 S.Ct. 1794, 1801–02, 23 L.Ed.2d 371 (1969); and *Walt Disney Productions v. United States*, 480 F.2d 66, 68 (9th Cir.1973).

The court agrees with HUD that heed should be paid to guidance from Congress about the proper interpretation of statutes. Unfortunately for HUD, that is not the issue in this case. There is no question that HUD had the authority under the statute when it entered into HAP contracts to use comparability studies as a limitation on AAAF adjustments, and *Rainier View* itself so states. But what *Rainier View* then went on to hold is that, despite HUD's statutory authority to choose differently, it elected to limit itself *contractually*. It is not within the purview of Congress to engage in contract interpretation; that is a function of the judiciary which it duly exercised in *Rainier View*.

HUD also argues that even if the *Rainier View* ruling regarding Section 8 owners' rights must be followed, plaintiffs in this case were not parties to *Rainier View*. HUD contends that this court must analyze plaintiffs' claims under the law as it now stands under the new legislation. *League to Save Lake Tahoe, Inc. v. Trounday*, 598 F.2d 1164, 1172–73 (9th Cir.1979), *citing Bradley v. School Board of City of Richmond*, 416 U.S. 696, 712, 94 S.Ct. 2006, 2016, 40 L.Ed.2d 476 (1974); *Peterson v. United States Department of Interior*, 899 F.2d 799 (9th Cir.1990).

The court rejects HUD's argument. For one thing, this court is bound by the Ninth Circuit decision in *Rainier View*. Insofar as the provisions in plaintiffs' HAP contracts are the same as those construed in *Rainier View*, this court must follow that decision. Moreover, as the court pointed out above, the Ninth Circuit already recognized HUD's statutory authority to conduct comparability studies when it reached its decision in *Rainier View*. Since the new legislation merely reaffirms that point, HUD has no basis for arguing that the existence of the new legislation should lead to any different result in this case on the

---

**3.** The overall limitation provision to which the Ninth Circuit refers states that "[n]otwithstanding any other provisions of this Contract, adjustments as provided in this Section shall not result in material differences between the rents charged for assisted and comparable unassisted units, as determined by the Government; ..."

issue of *contractual* interpretation decided by *Rainier View.*[4]

2. Vested Nature of Contract Right

■ Having established that plaintiffs do have a contract right to AAAF adjustments under their HAP contracts, the court turns to the question of whether that right is vested

As a preliminary matter, the court notes that plaintiffs do not challenge the authority of Congress to amend the Section 8 program. There is no doubt that Congress had full authority to alter the terms of the program or even to abolish it completely. Plaintiffs' contention is instead that, in keeping with Fifth Amendment due process considerations, Congress did not have the power to nullify the contract obligations incurred by the federal government pursuant to HUD's HAP contracts with plaintiffs.

HUD responds that, according to well-established principles governing the exercise of sovereignty, Congress retains the power to modify obligations of the United States by subsequent legislation unless it expressly relinquishes that power. HUD relies on *Bowen v. Public Agencies Opposed to Social Security Entrapment,* 477 U.S. 41, 106 S.Ct. 2390, 91 L.Ed.2d 35 (1986), in which the United States Supreme Court held:

"While the Federal Government, as sovereign, has the power to enter contracts that confer vested rights, and the concomitant duty to honor those rights, see *Perry v. United States,* 294 U.S. 330, 350–354 [55 S.Ct. 432, 434–37, 79 L.Ed. 912] (1935); *Lynch v. United States,* 292 U.S. 571 [54 S.Ct. 840, 78 L.Ed. 1434] (1934), we have declined in the context of commercial contracts to find that "a sovereign forever waives the right to exercise one of its sovereign powers unless it

expressly reserves the right to exercise that power in" the contract. *Merrion v. Jicarilla Apache Tribe,* 455 U.S. 130, 148 [102 S.Ct. 894, 907, 71 L.Ed.2d 21] (1982).... [S]overeign power, even when unexercised, is an enduring presence that governs all contracts subject to that sovereign's jurisdiction, and will remain intact unless surrendered in unmistakable terms."

477 U.S. at 52, 106 S.Ct. at 2396–97.

Before reaching any conclusion about the applicability of the reasoning in *Bowen* to this case, the facts bear inspection. In *Bowen,* the Supreme Court considered whether the states had a vested contractual right to terminate their participation in the Social Security system. When Congress initially passed the Social Security Act of 1935, 42 U.S.C. § 301 *et seq.,* it excluded from coverage all employees of states and their political subdivisions. In 1950, however, Congress responded to pressure from states seeking Social Security coverage for their employees by enacting § 418, which authorizes voluntary participation by states in the Social Security system. States electing coverage entered the system by executing an agreement with the Secretary of Health and Human Services. State and local entities from all fifty states thereafter entered into § 418 agreements.

As enacted in 1950, § 418 also allowed states to terminate their agreements upon two years advance notice in writing to the Secretary. Until the mid–1970's, very few states elected to do so. But beginning in 1977, the number of such terminations increased until they exceeded the number of newly-covered employees. In 1983, Congress, fearing for the integrity of the Social Security system, amended § 418 by repealing the termination provision. The amendment applied to all terminations even

---

**4.** For this reason, *Peterson v. Department of Interior,* 899 F.2d 799 (9th Cir.1990), on which HUD relies is inapposite. In *Peterson,* plaintiffs alleged that the Reclamation Reform Act of 1982 violated their Fifth Amendment due process rights by depriving them of subsidized water which they were contractually entitled to receive from federal reclamation projects. As HUD points out, the Ninth Circuit found no

constitutional violations because plaintiffs' contracts, read in conjunction with the underlying statutory authority, did not grant plaintiffs any vested rights to subsidized water. In *Rainier View,* on the contrary, the Ninth Circuit concluded that plaintiffs did possess vested contract rights. The court notes that Judge Norris, the author of the *Peterson* decision, was also on the panel which decided *Rainier View.*

if notice had been filed prior to the enactment of the legislation.

The state of California and several of its public agencies filed suit, arguing that they had been unconstitutionally deprived of their contractual right under the § 418 agreement to terminate their participation in the Social Security system. The United States Supreme Court concluded in *Bowen* that, given the nature and provisions of the legislation pursuant to which the federal government entered into the § 418 agreements, the states did not acquire any enforceable contract rights. Whatever contractual arrangement the parties had reached thus remained subject to change by subsequent legislation.

Having carefully considered the ruling in *Bowen,* this court finds that it is inapposite. As the Supreme Court stressed, the termination provision of the § 418 agreement

> constituted neither a debt of the United States, see *Perry v. United States, supra,* nor an obligation of the United States to provide benefits under a contract for which the obligee paid a monetary premium, see *Lynch v. United States, supra.* The termination clause was not unique to this Agreement; nor was it a term over which the State had any bargaining power or for which the State provided independent consideration. Rather, the provision simply was part of a regulatory program over which Congress retained authority to amend in the exercise of its power to provide for the general welfare.

*Id.* Given these circumstances, the Supreme Court concluded that the termination provision of the § 418 agreement did not rise to the level of "property" within the meaning of the Fifth Amendment and could not confer any sort of vested right in view of Congress' reserved power to amend the legislation.

The situation before this court is very different. Unlike the § 418 agreements, the HAP contracts were bargained-for agreements for which plaintiffs did pay

independent consideration. As such, the contracts here are akin to the agreements in *Perry v. United States,* 294 U.S. 330, 55 S.Ct. 432, 79 L.Ed. 912 (1935) (life insurance contracts between the federal government and private parties) and *Lynch v. United States,* 292 U.S. 571, 54 S.Ct. 840, 78 L.Ed. 1434 (1934) (contract between federal government and private holders of federal bonds) which the Supreme Court was careful to distinguish from the situation in *Bowen.* Like the agreements in *Perry* and *Lynch,* the HAP contracts clearly do create financial obligations on the part of the United States which vest contract rights in plaintiffs.

Indeed, the HAP contracts included a provision pledging the full faith and credit of the United States government to the payment of the obligations incurred under the contract. Paragraph 1.6 of the HAP contracts stated: *"Government Assurances to Owner.* The execution of this agreement by the government signifies that the faith of the United States is solemnly pledged to the payment of housing assistance payments pursuant to the contract and that funds have been obligated by the government for such payment."

3. Substantial Impairment of Contract

If, as the court has concluded above, plaintiffs had vested contractual rights to rent adjustments pursuant to the AAAFs, then HUD does not dispute that Section 801 substantially impairs plaintiffs' exercise of those rights.

4. Permissible Abrogation of Contract Rights

Having found that the plaintiffs possess vested contract rights which are substantially impaired by Section 801, the court must finally consider whether Congress is, nevertheless, permitted to abrogate those rights in furtherance of a public purpose.

The parties differ significantly in their analysis of the appropriate standard to apply in deciding this question. HUD maintains that Congress need only have a rational basis for enacting Section 801.[5]

5. In support of this proposition, HUD cites *United States v. Sperry Corp.,* 493 U.S. 52, 110 S.Ct.

Plaintiffs, on the other hand, insist that the courts must use a heightened review standard when examining congressional legislation impairing the federal government's own contracts.[6] *Compare United States Trust Co. of New York v. New Jersey,* 431 U.S. 1, 25, 97 S.Ct. 1505, 1519, 52 L.Ed.2d 92 (1977), a case under the Contract Clause of the United States Constitution, Art. 1, § 10, cl. 1, in which the Court held that the Contract Clause was not an absolute bar to subsequent modifications of a state's own financial obligations: "As with laws impairing the obligations of private contracts, an impairment may be constitutional if it is reasonable and necessary to serve an important public purpose."

But despite their differences of opinion concerning the standard of review, both plaintiffs and HUD agree that Congress cannot abrogate vested contract rights solely to save money. In *Lynch,* 292 U.S. at 580, 54 S.Ct. at 844, the Court stated categorically that "Congress was without power to reduce expenditures by abrogating contractual obligations of the United States." The Court repeated this holding two years later in *Perry,* 294 U.S. at 352–54, 55 S.Ct. at 435–37. More recent cases reiterating this principle include *Larionoff v. United States,* 533 F.2d 1167, 1179–80 (D.C.Cir.1976), and *Orrego,* 701 F.Supp. at 1395–96.

HUD argues strenuously that, while saving money may have been part of the congressional motivation for enacting Section 801, Congress also had several other purposes which rescue the legislation from unconstitutionality. These include: 1) effectuating the original congressional objective of avoiding excessive rents and rates of returns for Section 8 projects; 2) redressing HUD's inconsistent application of

comparability studies; 3) ensuring a reasonable rate of return to Section 8 owners; and 4) resolving widespread disputes over HUD's use of comparability studies in adjusting Section 8 rents.

Regarding the first and third reasons as stated by HUD, these are simply thinly veiled attempts to recast the essential congressional purpose of saving money. As for the fourth justification for the legislation, resolving widespread disputes, the only reason for the continued existence of a controversy was HUD's refusal to accept the *Rainier View* decision as binding. The second justification is at first blush somewhat more convincing. But only if a threshold determination is made that comparability studies are even applicable does Congress even have to reach the issue of how to conduct them. In the case of plaintiffs, that threshold showing has not been made.

*Compare Larionoff, supra* at 1180, in which the District of Columbia Circuit reviewed congressional reasons for repealing a military reenlistment bonus. The court found that, although the stated reason was to increase military flexibility in granting bonuses, "our review of the legislative history leads us to conclude that the Congress was primarily concerned with reducing government expenditures by more narrowly tailoring the reenlistment bonus scheme to actual military requirements." The *Larionoff* court accordingly held that the legislation was unconstitutional.

## III. CONCLUSION

For the above-stated reasons, the court finds that Section 801 is unconstitutional in that it violates plaintiffs' due process rights under the Fifth Amendment.[7]

---

387, 396, 107 L.Ed.2d 290 (1989); *Pension Benefit Guaranty Corp v. R.A. Gray & Co.,* 467 U.S. 717, 729, 104 S.Ct. 2709, 2717, 81 L.Ed.2d 601 (1984); and *Orrego v. United States Department of Housing and Urban Development,* 701 F.Supp. 1384, 1396–97 (N.D.Ill.1988). Only the last case involves a contract between the federal government and a private party.

6. Plaintiffs point to a few sentences from p. 477 of *Nowak on Constitutional Law* (1983) as well as some rather vague language from *Perry v.*

*United States,* 294 U.S. 330, 350, 55 S.Ct. 432, 434, 79 L.Ed. 912 (1935). *See also Allied Structural Steel Co. v. Spannaus,* 438 U.S. 234, 244–45, 98 S.Ct. 2716, 2722–23, 57 L.Ed.2d 727 (1978).

7. Given this result, the court need not address plaintiffs' other contention that Section 801 constitutes a questioning of the public debt in violation of the Fourteenth Amendment to the United States Constitution.

## ORDER GRANTING SUPPLEMENTAL RELIEF IN PART

THIS MATTER comes before the court on plaintiffs' motion for supplementary relief based upon declaratory judgment. Having reviewed the matter, together with all documents filed in support and in opposition, and being fully informed, the court finds and rules as follows:

### I. FACTUAL BACKGROUND

Plaintiffs are owners of housing projects that fall under Section 8 of the United States Housing Act of 1937 as amended, 42 U.S.C. § 1437F. The Section 8 housing program is administered by defendants Secretary and Department of Housing and Urban Development ("HUD"). As discussed in prior orders, this case is part of an ongoing dispute between housing project owners and HUD over how rent adjustments are to be computed.[1]

Section 801 of the Department of Housing and Urban Development Reform Act of 1989, Pub.L. No. 101–235, 103 Stat.1987, Dec. 15, 1989, authorized HUD to adjust rents on Section 8 housing projects based on rent comparability studies. Plaintiffs, however, had entered into contracts with HUD entitling them to rent adjustments based on the application of Automatic Annual Adjustment Factors ("AAAFs"). On September 20, 1990, this court found that Section 801 impaired plaintiff's vested contractual right to rent adjustments based on the AAAFs as provided in their contracts with HUD or authorized public housing agencies. HUD's January 1991 appeal of that decision is pending before the Ninth Circuit Court of Appeals. In February, HUD began making rent adjustments based on the applicable AAAFs. Declara-

tion of Robert L. Stettner, para. 4 and attachment 1. The AAAF-based rent adjustments are made from the latest HUD-approved rent, not from what the rent would have been had HUD been applying the AAAFs as they were obligated to under their contracts with plaintiffs. Defendants' Memorandum in Opposition, at 4 n. 4.

Plaintiffs now request that this court enforce its declaratory judgment by: (1) ordering HUD to *immediately* set current rents at the levels that would have resulted if past rent adjustments had been based on the AAAFs; (2) ordering HUD to make all prospective rent adjustments based on the AAAFs; (3) ordering HUD to pay plaintiffs the AAAF rents wrongfully withheld by HUD through the date of the order; (4) enjoining HUD from imposing selective and discriminatory practices on plaintiffs, including the refusal to process rent adjustments and reserve disbursements because project funds were used to enforce plaintiffs' rights against HUD, and the refusal to correct mathematical errors and otherwise deal in good faith with plaintiffs; and (5) awarding plaintiffs attorneys fees and expenses incurred in bringing this motion pursuant to 28 U.S.C. § 2412(d).[2]

### II. DISCUSSION

As noted above, this is not the first time that HUD, despite adverse judicial rulings, has been reluctant to fulfill its contractual obligations to apply rent adjustments based on AAAFs. HUD now contends that an additional order from this court is not necessary because: (1) this court no longer has jurisdiction to grant the supplemental relief requested by plaintiffs; (2) even if this

**1.** In *Rainier View Associates v. United States Department of Housing and Urban Development,* 848 F.2d 988 (9th Cir.1988), the Ninth Circuit held that prior contracts between Section 8 housing project owners and HUD clearly and unambiguously required HUD to apply the AAAFs in adjusting rents. After the Ninth Circuit entered that ruling, plaintiffs had to petition this court to order HUD to fulfill their contractual obligations. *See* Plaintiffs' Reply to Defendants' Memorandum in Opposition to Plaintiffs' Motion for Supplemental Relief, Exhibit A (*Rainier View Associates v. United States,*

*et al.,* No. C83–997R, Order Granting Government's Motions for Clarification and Entry of Judgment, Denying Stay Pending Appeal and Denying Plaintiffs' Motion for Contempt Judgment (April 15, 1988)).

**2.** Plaintiffs also ask the court to order its September 20, 1990, order binding on the HUD and its officers and agents. Such an order is unnecessary. All of this court's orders in this case are binding on the parties.

court has jurisdiction, HUD would be entitled to a stay pending appeal; (3) money damages such as those requested by plaintiffs cannot be obtained from the government absent a waiver of sovereign immunity; (4) the injunctive relief requested by plaintiffs with respect to discriminatory and selective treatment of plaintiffs has no basis in fact and is too vague to form the basis for relief; and (5) HUD has agreed to make rent adjustments based on the applicable AAAFs pending the outcome of its appeal.

### A. *Jurisdiction*

██ Where a notice of appeal has been filed, the district court retains jurisdiction only to enforce a judgment and may not alter or enlarge the scope of its judgment while that judgment is on appeal. *N.L. R.B. v. Cincinnati Bronze, Inc.*, 829 F.2d 585, 588 (6th Cir.1987). Thus, the initial issue for the court is whether the plaintiffs' requested relief, if granted, would enlarge the scope of its judgment or whether it would merely enforce the judgment.

### 1. Request for Injunctive Relief from Alleged Discriminatory and Selective Behavior

██ Enjoining defendants from engaging in discriminatory or selective behavior toward the plaintiff Section 8 housing projects clearly would expand or alter the judgment. Such behavior was not before the court on plaintiffs' complaint for declaratory judgment. In addition, the vague allegations made by plaintiffs and in the Affidavit of Janet Marie are an insufficient basis for granting injunctive relief since they do not specify particular, identifiable instances of selective and discriminatory behavior. Furthermore, Robert L. Stettner, head of the Seattle HUD office's division of Housing's Multifamily Loan Management Branch, denies that HUD has engaged in any discriminatory or selective behavior with respect to plaintiffs or Ms. Marie. Declaration of Robert L. Stettner, paras. 7, 9, 10.

### 2. Request for Attorneys Fees

██ Imposition of sanctions through award of attorneys fees or institution of contempt proceedings also would enlarge or alter a court's judgment. *See Donovan v. Mazzola*, 761 F.2d 1411, 1414 (9th Cir. 1985).

### 3. Request for Prospective and Retroactive Rent Adjustments Based on AAAFs

██ Plaintiffs final requests for relief are that the court order defendants to: (1) immediately set current rents at the levels that would have resulted if past rent adjustments had been based on the AAAFs; (2) make all prospective rent adjustments based on the AAAFs; and (3) pay plaintiffs the AAAF rents wrongfully withheld through the date of this order.

When the court ruled that Section 801 was unconstitutional, meaning unlawful, it assumed that HUD would discontinue using it as authority for making rent adjustments and would return instead to the manner specified in its contract with plaintiffs. However, apparently thinking that the court's order declaring Section 801 unconstitutional was merely an advisory opinion, HUD chose to ignore it for five months. Only in February did HUD begin to make rent adjustments based on the applicable AAAFs. Declaration of Robert Stettner, para. 4 and attachment 1. Nonetheless, these rent adjustments were apparently based on the pre-existing rents and not on rents that would have resulted if past rent adjustments had been based on the AAAFs.

This court's holding that Section 801 is unconstitutional was not a whim. The court expected HUD to act in accordance with that ruling. Apparently HUD is incapable of doing so without further guidance. Such additional guidance does not enlarge or alter the scope of the September 20, 1990, order, rather it is designed only to effectuate it. Pursuant to 28 U.S.C. § 2202 this court has the authority to grant

the relief necessary to effectuate a declaratory judgment.[3]

### B. *Stay Pending Appeal*

■ HUD has not asked for a stay of this court's September 20, 1990, order holding Section 801 unconstitutional, nor would it be automatically entitled to such a stay. Although the presumed constitutionality of an act of Congress weighs in favor of granting a stay pending appeal, *Walters v. Nat'l Ass'n of Radiation Survivors,* 468 U.S. 1323, 1324, 105 S.Ct. 11, 12, 82 L.Ed.2d 908 (1984), the court must still examine the moving party's likelihood of success on the merits and chances of irreparable harm. *Lopez v. Heckler,* 713 F.2d 1432 (9th Cir. 1983). However, until HUD moves for a stay of enforcement of the September 20, 1990, order holding Section 801 unconstitutional, this court will not further address the merits of staying any enforcement orders pending appeal.

### C. *Enforcement Prohibited by Sovereign Immunity*

■ HUD contends that sovereign immunity, absent a waiver, prohibits an award of money damages through specific enforcement of contract rights. The court notes initially that plaintiffs here, with the exception of their request for attorney's fees, do not ask for money damages except in enforcement of existing contract rights. In addition, HUD's argument that sovereign immunity bars this court from specifically enforcing plaintiffs' contract rights is not persuasive. The authority cited by HUD, *Price v. GSA,* 894 F.2d 323 (9th Cir.1990), refers to limits on specific enforcement of preaward contract rights, not specific enforcement of *existing contract rights.*

Plaintiffs here ask only that HUD comply with this court's ruling that Section 801 is unconstitutional by making retroactive and prospective rent adjustments through application of the AAAFs, a remedy this court awarded previously in a similar effort

by Section 8 housing project owners to enforce their existing contract rights. *Rainier View Associates v. United States, et al.,* No. C83–997R, Order Granting Government's Motions for Clarification and Entry of Judgment, Denying Stay Pending Appeal and Denying Plaintiffs' Motion for Contempt Judgment (April 15, 1988). *See also Acacia Villa v. Kemp, et al.,* No. 90–0390 MRP (Sx), Final Judgment Pursuant to Fed.R.Civ.P. 54(b) (C.D.Cal. Oct. 31, 1990) (declaring Section 801 unconstitutional and ordering HUD to pay future rent increases by applying the AAAFs to the rent that would have been in force if HUD had applied the AAAFs in the past without rent comparability studies).

### III. CONCLUSION

In summary, it is well within this court's power under the Declaratory Judgment Act, 28 U.S.C. § 2202, and within its jurisdiction pending appeal to enforce its September 20, 1990, order holding Section 801 unconstitutional.

It is hereby ORDERED, ADJUDGED and DECREED that:

(1) plaintiffs' motion for supplementary relief is GRANTED in part;

(2) defendant is to set current rents at the levels that would have resulted if past rent adjustments had been based on the AAAFs;

(3) defendant is to make all prospective rent adjustments based on the AAAFs;

(4) defendant is to pay plaintiffs the AAAF rents wrongfully withheld from the date of its September 20, 1990, order through the date of this order; and

(5) plaintiffs' requests for attorneys fees and for an injunction barring defendants from selective and discriminatory behavior toward plaintiffs are DENIED.

---

**3.** Defendants' reliance on *Steffel v. Thompson,* 415 U.S. 452, 472, 483, 94 S.Ct. 1209, 1222, 1227, 39 L.Ed.2d 505 (1974), is misplaced. Defendants' Memorandum in Opposition at 3 n. 3. *Steffel* dealt with a federal court's power to enjoin state law enforcement activities to enforce a declaratory judgment. At issue in this case is enforcement of a declaratory judgment holding a federal statute unconstitutional.